**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DECKER MANUFACTURING )
CORPORATION, a Michigan corporation, )
       )
       ) Case No. 1:13-cv-00820-RHB
Plaintiff/Counterclaim Defendant, ) Hon. Judge Robert Holmes Bell
vs. ) Magistrate: Phillip J. Green
       )
THE TRAVELERS INDEMNITY ) **ORAL ARGUMENT REQUESTED**
COMPANY. )
       )
       )
Defendant/Counterclaim Plaintiff. )
_____ )

**THE TRAVELERS INDEMNITY COMPANY'S RESPONSE IN OPPOSITION
TO DECKER'S MOTIONS FOR SUMMARY JUDGMENT ON TRAVELERS
<u>COUNTERCLAIM AND ON PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

CONCISE COUNTER-STATEMENT OF THE ISSUES PRESENTED........................................ v

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT ... vi

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................................... 2

   I.   Underlying Claim Timeline............................................................................ 2

   II.   Travelers Participation in Decker's Defense for the Underlying Claim. ........................... 3

   III.   The Travelers Policies ........................................................................... 4

ARGUMENT ................................................................................................................. 6

   I.   Decker's Motions for Summary Judgment should be Denied Because Coverage of the Underlying Claim is Precluded by the Pollution Exclusion in the Travelers Policies. ........................................................ 6

   II.   Travelers Participated in Decker's Defense of the Underlying Claim and Satisfied any and all Defense Obligations it had to Decker under the Travelers Policies and Applicable Law........................................... 11

      A.   Travelers did not breach its duty to defend Decker for the Underlying Claim. .................................................................... 11

      B.   Travelers did not breach the Travelers Policies and has not waived any rights or defenses to coverage........................................... 14

   III.   Decker Has Not Met Its Burden of Showing it has Satisfied all Conditions Under the Travelers Policies. ........................................... 16

   IV.   Decker Has Failed to Demonstrate Entitlement to Damages. ............................... 17

      A.   Breach of Contract Damages............................................................ 17

      B.   Interest. ...................................................................................... 19

      C.   The Collateral Source Rule Does Not Apply. ...................................... 20

CONCLUSION ............................................................................................................. 21

i

# INDEX TO AUTHORITIES

## CASES

*Action Auto Stores, Inc. v. United Capitol Ins. Co.,*
   845 F. Supp. 417 (W.D. Mich. 1993) ..................................................................... 16

*Aetna Cas. & Sur. Co. v. Dow Chemical Co.,*
   44 F. Supp. 2d 847, 853 (E.D Mich. 1997)................................................... vi, 11, 12

*Aetna Cas. Insur. Co. v. Dow Chemical Co.,*
   28 F. Supp. 2d 440, 447-448 (E.D. Mich. 1998) ....................................................... 7

*American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.,*
   452 Mich. 440; 550 N.W.2d 475 (1996)............................................................. 11, 12

*Arco Industries Corp. v. American Motorists Ins. Co.,*
   448 Mich. 395, 531 N.W.2d 168 (1995)..................................................................... 7

*Bruinsma v. State Farm Fire and Cas. Co.,*
   410 F. Supp. 2d 628, 633 (W.D. Mich. 2006) ......................................................... 17

*Citizens Ins. Co. v. Secura Ins.,*
   279 Mich. App. 69, 74, 755 N.W.2d 563 (2008)..................................................... 11

*City of Albion v. Guarantee National,*
   73 F. Supp. 2d 846 (W.D. Mich. 1999) .......................................................... 8, 9, 10

*Corl v. Huron Castings, Inc.,*
   450 Mich. 620, 544 N.W.2d 278 (1996)...................................................... vi, 17, 20

*Detroit Edison Co. v. Michigan Mut. Ins. Co.,*
   102 Mich. App. 136, 141–142, 301 N.W.2d 832 (1981)............................. 12, 14, 15

*Detroit Water Joint Venture v. Agricultural Ins. Co.,*
   371 F.3d 336, 339 (6th Cir. 2004) ............................................................................. 7

*Elliot v. Cas. Ass'n of Am.,*
   254 Mich. 282, 287; 236 N.W. 782, 783 (1931).............................................. 14, 15

*Fireman's Fund Ins. Co. v. Ex-Cell-O-Corp,*
   790 F. Supp. 1318, 1321 (E.D. Mich. 1992)........................................................... 18

*First Mercury Syndicate, Inc. v. Telephone Alarm Sys., Inc.,*
   849 F. Supp. 599 (W.D. Mich. 1994) ...................................................................... 16

*FL Aerospace v. Aetna Cas. & Surety Co.,*
   897 F.2d 214, 220 (6th Cir. 1990) ........................................................... 8, 9, 10, 11

*Gelman Sciences, Inc. v. Fidelity and Cas. Co. of New York,*
   456 Mich. 305, 313; 572 N.W.2d 617 (1998)......................................................... 12

*Giffels v. Home Ins. Co.,*
   19 Mich. App. 146, 153; 172 N.W.2d 540 (1969)............................................. 14, 15

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
  332 F.3d 976 (6th Cir. 2003) ........................................................................................ 21

*Gordon Sel-Way, Inc. v. Spence Bros., Inc.*,
  438 Mich. 488, 499; 475 N.W.2d 704 (1991) ............................................................... 19

*Heights Driving School, Inc. v. Top Driver, Inc.*,
  51 Fed. App. 932 (2002) ............................................................................................... 17

*Heniser v. Frankenmuth Mut. Ins. Co.*,
  449 Mich. 155; 534 N.W.2d 502 (1995) ..................................................................... vi, 7

*In re Dow Corning Corp.*,
  2010 WL 3927738 *9-*10 (Docket No. 95-20512, E.D. Mich. June 9, 2010) ...................... 20

*Jonesville Products, Inc. v. Trans America, Ins. Group*,
  156 Mich. App. 508; 402 N.W.2d 46 (1986) .................................................................. 10

*Kelly v. Thomas Solvent Co.*,
  717 F. Supp. 507, 514 (W.D. Mich. 1989) .................................................................... 19

*Kent County v. Home Ins. Co.*,
  217 Mich. App. 250; 551 N.W.2d 424 (1996) ....................................................... 8, 9, 10, 11

*Kewin v. Massachusetts Mut. Life Ins. Co.*,
  409 Mich. 401; 295 N.W.2d 50 (Mich.1980) ............................................................... 17

*Kirschner v. Process Design Assoc., Inc.*,
  459 Mich. 587; 592 N.W. 2d 707 (1999) ...................................................................... 15

*Lansing Bd. of Water and Light v. Deerfield Ins. Co.*,
  183 F. Supp. 2d 979 (W.D. Mich. 2002) ............................................................. vi, 15, 16

*Lawrence v. Will Darrah & Assocs., In*c.,
  445 Mich. 1, 6; 516 N.W.2d 43, 45 (Mich.1994) ........................................................... 17

*Michigan Ed. Employees Mut. Ins. Co. v. Turow*,
  242 Mich. App. 112, 117; 617 N.W.2d 725 (2000) ....................................................... 11

*Oscar W. Larson Co. v. United Capital Ins. Co.*,
  845 F. Supp. 458, 460 (W.D. Mich. 1993) .................................................................... 12

*Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*,
  438 Mich. 154; 476 N.W.2d 374 (1991) .............................................................. vi, 9, 12, 13

*RCO Engineering, Inc. v. ACR Industries, Inc.*,
  235 Mich. App. 48, 61-62; 597 N.W.2d 534 (1999) ...................................................... 20

*South Macomb Disposal Authority v. Am. Ins. Co.*,
  225 Mich. App. 635, 692; 572 N.W.2d 686 (1997) .............................................. 12, 18, 19

*Stryker Corp. v. XL Ins. Am., Inc.*,
  2013 WL 326408 (W.D. Mich. June 27, 2013) ............................................................. 21

*Tebo v. Havlik*,
  418 Mich. 350, 366; 343 N.W.2d 1981 (1984) ............................................................. 20

iii

*Transamerica Ins. Co., v. Safeco Ins. Co.,*
 189 Mich. App. 55; 472 N.W.2d 5 (1991)............................................................ 12

*Traverse City Light & Power Board v. Home Ins. Co.,*
 209 Mich. App. 112; 530 N.W.2d 150 (1995)...................................................... 10

*United National Insurance Company v. SST Fitness Corp.,*
 309 F.3d 914 (6th Cir. 2002) ............................................................................... 16

**STATUTES**

M.C.L. § 500.2006........................................................................................................ 19

**RULES**

F.R.E. 408 .................................................................................................................... 21

Fed. R. Civ. P. 9(c) ...................................................................................................... 17

## CONCISE COUNTER-STATEMENT OF THE ISSUES PRESENTED

**I.**      Should Decker's motions for summary judgment be denied because coverage for the underlying claim is precluded by the pollution exclusion in the Travelers Policies?

**II.**      Has Decker failed to demonstrate that Travelers breached a duty to defend or otherwise waived rights by breaching the Travelers Policies?

**III.**      Has Decker failed to establish compliance with all conditions in the Travelers Policies as a matter of law?

**IV.**      Has Decker failed to demonstrate entitlement to damages, setting aside all else?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT</u>

Considerable authority from the Michigan Supreme Court sets forth the controlling authority supporting the issues presented in this motion, most notably, *Heniser v. Frankenmuth Mut. Ins. Co.,* 449 Mich. 155; 534 N.W.2d 502 (1995) (insured has the initial burden of establishing that its losses fall within the scope of the policy's insuring agreement); *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven,* 438 Mich. 154; 476 N.W.2d 374 (1991) (in interpreting pollution exclusion, Michigan Supreme Court holds that focus is on the initial discharge into the environment); and *Corl v. Huron Castings, Inc.,* 450 Mich. 620, 544 N.W.2d 278 (1996) (collateral source rule does not apply to contract actions).

Michigan's federal district courts haves also rendered several decisions that bear on the analysis, including *Aetna Cas. & Sur. Co. v. Dow Chemical Co.,* 44 F. Supp. 2d 847, 853 (E.D Mich. 1997) (duty to defend is determined by examination the allegations of the underlying complaint, the provisions of the policy and inquiring whether the potential for indemnification exists) and *Lansing Bd. of Water and Light v. Deerfield Ins. Co.,* 183 F. Supp. 2d 979 (W.D. Mich. 2002) (insurer that undertakes a defense subject to a reservation of rights does not waive any potential defenses to coverage).

Defendant/Counterclaim Plaintiff The Travelers Indemnity Company ("Travelers"), in support of its response in opposition to Plaintiff/Counterclaim Defendant Decker Manufacturing Company's ("Decker") Motion for Summary Judgment on Travelers Counterclaim [Doc. ## 57, 61] and Motion for Summary Judgment on Plaintiff's Complaint [Doc. ## 58, 65], states as follows:

## PRELIMINARY STATEMENT

Decker alleges that it is entitled to insurance coverage under the Travelers Policies (defined below) for defense and indemnity costs incurred with respect to the Albion Sheridan Township Landfill ("ASTL") Superfund Site.  Decker specifically seeks insurance coverage for defense and indemnity costs it incurred with respect to:  (1) a claim brought by the United States Environmental Protection Agency ("US EPA") in 1995 ("US EPA Claim); (2) an underlying lawsuit captioned: *United States of America v. City of Albion, Michigan v. Cooper Industries, Inc., et. al. v. Decker Manufacturing Corporation,* Case No. 1:97-cv-1037, filed in the United States District Court for the Western District of Michigan ("EPA Lawsuit"); and, (3) a claim by the State of Michigan requesting payment of Michigan Department of Environmental Quality ("MDEQ") past response costs for actions taken at the ASTL Superfund Site ("MDEQ Claim") (collectively the "Underlying Claim").

Decker's two motions for summary judgment, on its Complaint and on Travelers Counterclaim, are both properly denied first and foremost because coverage for the Underlying Claim is precluded by the pollution exclusion in the Travelers Policies.  That exclusion precludes coverage under Michigan law, as set forth in the brief in support of Travelers motion for summary judgment based on the pollution exclusion [Doc. # 59].  Decker's cursory argument that the exclusion does not apply is wrong for several reasons, as discussed in this brief.

1

In addition, Decker's argument that Travelers breached its duty to defend, which it makes in both of its motions, is without merit even setting aside the applicability of the pollution exclusion.  Despite the absence of potential coverage, Travelers *agreed* to participate in Decker's defense as soon as it became apparent that there had been an allegation of "property damage" as defined by the Travelers Policies notwithstanding the applicability of the pollution exclusion.[1]

Decker has also failed to demonstrate that all conditions set forth in the Travelers Policies were met.

Finally, Decker has utterly failed to demonstrate entitlement to any damages, much less the amount of damages discussed in its summary judgment briefs.  Indeed, Travelers has paid a greater share of defense costs than it owed, even setting aside the absence of coverage.  Nor is there any viable claim for interest, given the absence of any damages.

For the reasons set forth herein and in the briefs filed in support of Travelers two summary judgment motions, Decker's summary judgment motions should be denied.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.   Underlying Claim Timeline.[2]

- October 4, 1989 the ASTL was added to the National Priorities List ("NPL"). (NPL Site Narrative, [Doc. # 59-9])

---

[1] As set forth in Travelers brief in support of its motion for partial summary judgment on trigger and allocation [Doc. # 62], any defense obligation Travelers had to Decker is limited to a *pro rata,* time-on-the-risk share that is determined by comparing the four years that Travelers issued policies to Decker with the 40 year period that property damage occurred at the ASTL, here approximately 10% (i.e., 4/40).  Accordingly, to the extent that Travelers has any defense obligation in this case, such obligation is limited to no more than 10% of Decker's claimed defense costs.  Notwithstanding this, and as further set forth below, as an accommodation to Decker, Travelers has, to date, actually paid Decker far more than its share of these defense costs.

[2] A detailed description of the ASTL including its site history, site description, operation, structure and waste disposal is set forth in detail in Travelers brief in support of its motion for summary judgment based on the pollution exclusion [Doc. # 59, Page ID ## 551-558].

- March 28, 1995 the Record of Decision ("ROD") was issued for the ASTL. (ROD, [Doc. # 59-13]).  The ROD set forth the selected remediation action and contingent remediation action for the ASTL.  *Id.*

- June 6, 1995, the US EPA issued a Special Notice of Liability letter to Decker. [Doc. #61-5].

- October 11, 1995, an Administrative Order for Remedial Design and Remedial Action ("UAO") was issued to Decker and three other entities.  [Doc. #59-3].

- December 11, 1997, the US EPA filed the EPA Lawsuit.  Decker was brought into the EPA Lawsuit on or about March 5, 1998 by Cooper Industries, Inc. ("Cooper") and Corning Glass, Inc. ("Corning") as a third-party defendant.  The City of Albion also filed a counter-claim against Decker.  (Ex. A, Docket Sheet for EPA Lawsuit).[3]

- March 25, 1999, the State of Michigan advised Decker it was asserting a right to reimbursement for past defense costs incurred at the ASTL. (Ex. B, MDEQ letter).

- July 2, 1999, the EPA Lawsuit and US EPA Claim were resolved by the entry of a Consent Decree.  (Ex. C, Consent Decree).   Pursuant to the Consent Decree, Decker agreed to:  (a) perform Operation and Maintenance ("O&M") of the remedial action at the ASTL; (b) reimburse the United States $250,000 for Past Response Costs; and (c) to pay the United States $100,000 for Future Response Costs.  *Id.*

## II.    Travelers Participation in Decker's Defense for the Underlying Claim.

Despite being in contact with the US EPA regarding contamination at the ASTL beginning in September 1988, Decker did not provide Travelers with notice of Decker's involvement and potential liability at the ASTL until November 14, 1995, over seven years later. (Ex. D).[4]  Once Travelers received notice, it agreed, in concert with Decker's other carriers, to

---

[3] Attached as Exhibit 1 is the Affidavit of Nicole E. Wilinski in support of The Travelers Indemnity Company's Response in Opposition to Decker's Motions for Summary Judgment on Travelers Counterclaim and on Plaintiff's Complaint.  Exhibits A-Y referenced in this brief are attached to Exhibit 1.

[4] By letter dated September 23, 1988, the US EPA sent Decker a Request for Information pursuant to Section 104(e) of CERCLA and Section 3007 of RCRA.  (Ex. E, EPA 104(e)

participate in Decker's defense of the Underlying Claim subject to a full reservation of rights while also informing Decker that there was likely no indemnity coverage available for its claim. (Exs. L-X).   Furthermore, Travelers initially agreed to pay 40% of Decker's defense costs incurred from November 1, 1995 to March 26, 1998 and 29% of Decker's defense costs incurred after March 26, 1998 although it was only legally obligated to pay, at most, 10%.[5]  (Ex. X).

## III.    The Travelers Policies

Travelers issued the following primary general liability policies to Decker:

- Policy No. 650-2406865-IND/650-822A082-2-IND, effective from January 1, 1973 to January 1, 1975 ("1973-1975 Travelers Policy") [Doc ## 62-17, 62-18];[6]

- Policy No. 650-822A140-1-IND, effective from January 1, 1975 to January 1, 1976 ("1975-1976 Travelers Policy") [Doc # 62-19];

- Policy No. 650-822A140-1-IND, effective from January 1, 1976 to January 1, 1977 ("1976-1977 Travelers Policy") [Doc # 62-20].[7]

The above policies issued to Decker are collectively referred to herein as the "Travelers

---

Request).  Decker provided a response by letter dated October 27, 1988.  (Ex. F).  The US EPA sent Decker a Supplemental Request for Information pursuant to Section 104(e) by letter dated April 2, 1992.  (Ex. G, EPA Supplemental 104(e) Request).  Decker responded by letter dated May 29, 1992.  (Ex. H).  The US EPA sent Decker further supplemental information requests by letter dated November 14, 1994.  (Ex. I).  Decker responded by letter dated September 22, 1995 and included an affidavit from Bernard Konkle.  (Ex. J).  Decker's September 22, 1995 letter requested that Decker be considered for a *De Minimus* or *De Micromis* settlement.  *Id.*  Travelers was not notified of the US EPA's requests for information until November 1995 and was not provided copies of the requests and Decker's responses until 1996.  (Ex. K).  Travelers reserves its right to raise late notice as a defense should this action proceed to trial.

[5] As further discussed below, at various points in its papers Decker complains that Travelers did not actually hire a lawyer to defend Decker with respect to the Underlying Claim (see, e.g., Decker's Motion on Travelers Counterclaim at p. 3 [Doc. #61, Page ID#1255]) yet Decker never explains why this is an issue nor alleges any harm as a result.  Decker ultimately retained a law firm of its choosing to defend the Underlying Claim.

[6] The 1973-1975 Travelers Policy is a two year policy.  Effective January 1, 1974 to January 1, 1975 the policy number was amended to 650-822A082-2-IND.

[7] The Travelers Policies were attached as Exhibits to Travelers summary judgment briefs [Doc ## 59 and 62].  Given their size, Travelers hasn't attached them to this response.

Policies."

The 1973-1975 Travelers Policy provides:

The Travelers agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of… property damage to which this Section applies, caused by an occurrence…and The Travelers shall have the right and duty to defend any suit against the Insured seeking damages on account of such … property damage…

The 1973-1975 Travelers Policy defines "property damage" as "injury to or destruction of tangible property."  "Occurrence" is defined as "an accident…which results, during the period this policy is in effect, in …property damage …."  [Doc ## 62-17, 62-18].

The 1973-1975 Travelers Policy contains the following exclusion:

LIMITATION OF COVERAGE FOR POLLUTION – MICHIGAN

It is agreed that the insurance does not apply

(a)     to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant

    (1)     if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable, or

    (2)     resulting from or contributed to by any condition in violation of or non-compliance with any federal rule, regulation or law applicable thereto:

but this exclusion (a) does not apply to property damage arising out of any emission, discharge, seepage, release or escape of petroleum or petroleum derivatives into any body of water;

(b)     to property damage arising out of any emission, discharge, seepage, release or escape of petroleum or petroleum derivatives into any body of water, but this exclusion (b) does not apply to property damage resulting from fire or explosion arising out of any emission, discharge, seepage, release or escape which neither

    (1)     is expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable, nor

    (2)     results from or is contributed to by any condition in violation of or non-compliance with any federal rule, regulation or law applicable

5

thereto.

(*Id.*).

Similarly, the 1975-1976 and 1976-1977 Travelers Policies provide:

The Travelers will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: … (b) property damage: to which this insurance applies, caused by an occurrence.

The Travelers shall have the right and duty to defend any suit against the Insured seeking damages on account of such …property damage…

The 1975-1976 and 1976-1977 Travelers Policies define "property damage" as "(a) physical injury to or destruction of tangible property which occurs during the policy period…." [Doc ## 62-19, 62-20, Section II]. "Occurrence" is defined as "as accident, including continuous and repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." (*Id.*). The 1975-1976 and 1976-1977 Travelers Policies included a pollution exclusion with substantially similar language. (*Id.*).

## ARGUMENT

Decker's two summary judgment motions, on its own Complaint and on Travelers Counterclaim, set forth overlapping arguments that can be addressed in this single response brief. Travelers further notes that much of what Decker argues is already refuted in the briefs filed in support of Travelers motions [Doc ## 59 and 62]. Decker's arguments are without merit for additional reasons as set forth below.

**I.     Decker's Motions for Summary Judgment should be Denied Because Coverage of the Underlying Claim is Precluded by the Pollution Exclusion in the Travelers Policies.**

Decker's claim for coverage fails first and foremost because coverage is precluded by the pollution exclusion in the Travelers Policies.[8]

---

[8] Travelers notes initially that it does not deny that the Underlying Claim involves "property

Decker acknowledges that all of the Travelers Policies contain a pollution exclusion but makes several initial arguments regarding why the pollution exclusion does not apply, none of which are availing.

Decker claims in a one-sentence argument that the second part of the pollution exclusion, regarding the release or escape of "petroleum or petroleum derivatives into any body of water," does not apply because the "aquifer under a landfill is not a 'body of water' for purposes of the pollution exclusion." citing *Aetna Cas. Insur. Co. v. Dow Chemical Co.*, 28 F. Supp. 2d 440, 447-448 (E.D. Mich. 1998) [Doc # 65, Page ID # 1956]. Decker's argument that this case does not involve a discharge into a "body of water" does not help it, because that claim, even if true, does not negate application of the first portion of the pollution exclusion which applies to bar all claims not involving a discharge into a body of water. Further, the *Aetna v. Dow* case is distinguishable on the grounds that that case, unlike this case, involved an aquifer that did not

---

damage" as defined in the Travelers Policies. For purpose of this response Travelers neither denies nor concedes the existence of an "occurrence" as defined in the Travelers Policies. Decker tries to equate the "expected or intended" requirement in the definition of "occurrence" with the "expected or intended" provision in the pollution exclusion. (See Decker's motion for summary judgment on plaintiff's complaint, [Doc # 58, Page ID ## 1957-1959]). But there is a significant difference, since the "occurrence" definition speaks of whether "property damage" is expected or intended, whereas the pollution exclusion applies irrespective of whether "property damage" is expected or intended so long as any discharge, release, etc. is expected or intended. Because there can only be coverage if neither the property damage nor "any" discharge, release, etc. was expected or intended, Travelers assumes *arguendo* that property damage was not expected or intended—because the discharge of contaminants clearly was expected or intended, as argued herein and in Travelers summary judgment motion regarding the pollution exclusion [Doc # 59]. Decker also devotes considerable attention to the issue of which party has the burden of proof regarding the various contract provisions. The question is easily answered under Michigan law. It is well established that an insured has the initial burden of establishing that its losses fall within the scope of the policy's insuring agreement. *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 534 N.W.2d 502 (1995); *Arco Industries Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 531 N.W.2d 168 (1995). *Detroit Water Joint Venture v. Agricultural Ins. Co.*, 371 F.3d 336, 339 (6th Cir. 2004). It is the insurer's burden to establish that an exclusion applies. *Heniser*, 534 N.W.2d at 505, n. 6; *Arco Ind. Corp.* 448 Mich. at 424-425.

lead to a separate body of water.

Decker next attempts to argue that the pollution exclusion does not apply because "there is no evidence of" the US EPA's claim. [Doc. # 65, Page ID#1957].  Travelers submits that the absence of evidence supporting an underlying claim has nothing to do with whether the allegations allege a covered claim.  Inasmuch as Decker seeks reimbursement of costs incurred to defend against and settle the US EPA's claims, the purported absence of any evidence to support those claims is irrelevant.  Moreover, as set forth in Travelers brief in support of its motion for summary judgment based on the pollution exclusion [Doc. # 59], there is ample, and indeed overwhelming evidence to support Travelers claim that the pollution exclusion applies and precludes coverage for the Underlying Claim.

Decker then turns to the heart of the dispute, which is whether the discharge, release, etc. was expected or intended from the standpoint of Decker or someone for whom Decker is liable. [Doc # 65, Page ID # 1957].  Even here, however, Decker starts off on the wrong foot by incorrectly focusing on whether "the damage" was expected or intended.  *Id.*   The pollution exclusion precludes coverage so long as the *discharge, seepage, release, etc*. was expected or intended—whether the *damage* was expected or intended is irrelevant for purposes of applying the exclusion.  Furthermore, the exclusion precludes coverage so long as *any* discharge, seepage, release, etc. was expected or intended.

Decker argues, "The relevant discharge to examine for 'expectation or intention' is the release from the landfill, not the original placement of waste in the Landfill."  *Id.*, citing *FL Aerospace v. Aetna Cas. & Surety Co.*, 897 F.2d 214, 220 (6th Cir. 1990).  Decker also cites *Kent County v. Home Ins. Co.*, 217 Mich. App. 250; 551 N.W.2d 424 (1996) and *City of Albion v. Guarantee National*, 73 F. Supp. 2d 846 (W.D. Mich. 1999) for the proposition that delivery

of waste for "storage" at a "facility that is licensed to store waste" is not a discharge of pollutants into the environment. [Doc # 65, Page ID # 1957].

As Travelers has argued at length in its brief in support of its motion for summary judgment regarding the pollution exclusion, *Kent County* and *City of Albion* are inapplicable and should not be followed in this case, both because they are distinguishable and because they are not the best indicators for what the Michigan Supreme Court would hold. As Travelers discussed at length, and will not repeat here, the Michigan Supreme Court adopted the initial-discharge rule in *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 476 N.W.2d 374 (1991), and likely would apply that rule to the facts at issue in this case. *See* Travelers brief, [Doc # 59, Page ID # 562-571]. And even if the Court were inclined to adopt the "equivalent of a container" exception espoused by the intermediate appellate court in *Kent County*, rather than the initial-discharge rule announced by the Michigan Supreme Court in *City of Woodhaven*, Travelers is nevertheless entitled to summary judgment because even Decker's expert admits that the landfill in this case was nowhere near "state of the art," i.e., purposefully designed and constructed to contain the waste as required by *Kent County* and *City of Albion*. *See* Travelers Brief, [Doc # 59, Page ID ## 571-574]. For the reasons set forth in Travelers brief in support of its motion for summary judgment regarding the pollution exclusion, Decker's argument that the "relevant discharge" is the release from the landfill is without merit.

Decker's reliance on *FL Aerospace* is misplaced for a host of reasons. First, that decision was issued by the Sixth Circuit prior to the Michigan Supreme Court's adoption of the initial-discharge rule in *City of Woodhaven*. As Travelers discussed in its summary judgment brief on the pollution exclusion, the adoption of the initial-discharge rule in *City of Woodhaven* is controlling. *FL Aerospace* was also issued prior to the Michigan Court of Appeals decision in

9

*Traverse City Light & Power Board v. Home Ins. Co.*, 209 Mich. App. 112; 530 N.W.2d 150 (1995). *Traverse City* is directly on point, as Travelers discussed in its prior briefing.

*FL Aerospace* is also distinguishable based on its policy language—just as *Kent County* and *City of Albion* are factually distinguishable. As in those cases, and unlike the policy language at issue in this case, the pollution exclusion referred to "the" discharge, rather than "any" discharge. The use of the phrase "*any*" emission, discharge, seepage, release, or escape . . ." makes it clear that it is wrong for a court to focus on a particular discharge as the "relevant" discharge. Further, the policy language in *FL Aerospace* focused on "the" discharge "into or upon land, the atmosphere, or any watercourse or body of water." *FL Aerospace*, 897 F.2d at 217. The language of the pollution exclusion in the Travelers Policies, however, refers to "any emission, discharge, seepage, release or escape . . ." period; there is no explicit requirement of a discharge into or upon land, the atmosphere or any watercourse or body of water.

Lastly, *FL Aerospace* is also distinguishable on its facts. That case involved the mere delivery of waste for storage at a facility; not the direct and wholesale dumping of waste sludge into a hole in the ground.

*FL Aerospace* is helpful, however, in one respect. The Sixth Circuit in *FL Aerospace* declined to follow a decision from Michigan's intermediate appellate court—because it perceived, based on additional information, that the Michigan Supreme Court would not follow that decision. As the Sixth Circuit explained:

> We recognize that our interpretation of the "sudden and accidental" exception departs from the Michigan Court of Appeals' decision in *Jonesville*[9] as well as from several subsequent Michigan Court of Appeals' decisions; however, we believe that the Michigan Supreme Court, following its own rules of insurance contract interpretation, would [rule contrary to those Michigan Court of Appeals'

---

[9] *Jonesville Products, Inc. v. Trans America, Ins. Group*, 156 Mich. App. 508; 402 N.W.2d 46 (1986).

decisions].

*FL Aerospace,* 897 F.2d at 219. As Travelers argued in its earlier briefing, this Court should find that the Michigan Supreme Court would not follow the "equivalent of a container" approach espoused by the Michigan Court of Appeals in *Kent County*.

Decker's final argument regarding the pollution exclusion is a misplaced quotation from *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 550 N.W.2d 475 (1996), where the Court said, "We find it difficult to believe that Anodco 'expected or intended' that its apparently lawful use of the seepage lagoon would result in property damage requiring remediation." [Doc # 65, Page ID #1958]. That observation in *American Bumper* was made with regard to policies that did not contain pollution exclusions, and thus where the only issue was whether the *property damage*—not the discharge or release of pollutants—was expected or intended. Irrespective of whether the property damage itself was expected or intended, because "any" discharge or release of pollutants was expected or intended, the pollution exclusion applies to preclude coverage.

**II.  Travelers Participated in Decker's Defense of the Underlying Claim and Satisfied any and all Defense Obligations it had to Decker under the Travelers Policies and Applicable Law.**

**A.  Travelers did not breach its duty to defend Decker for the Underlying Claim.**

The duty to defend arises from the language of the insurance contract. *Michigan Ed. Employees Mut. Ins. Co. v. Turow,* 242 Mich. App. 112, 117, 617 N.W.2d 725 (2000). In determining whether a duty to defend exists, courts are guided by established principles of contract construction. *Citizens Ins. Co. v. Secura Ins.*, 279 Mich. App. 69, 74, 755 N.W.2d 563 (2008). The duty to defend is determined by examining the allegations of the underlying complaint and the provisions of the insurance policy, and inquiring whether the potential for indemnification exists. *Aetna Cas. & Sur. Co. v. Dow Chemical Co.,* 44 F. Supp. 2d 847, 853

11

(1997); *City of Woodhaven*, at 159 (quoting *Detroit Edison Co. v. Michigan Mut. Ins. Co*., 102 Mich. App. 136, 141–142, 301 N.W.2d 832 (1981).  A duty to defend arises when the insured tenders to its insurer a claim that is potentially covered by the policy.  *Oscar W. Larson Co. v. United Capital Ins. Co.,* 845 F. Supp. 458, 460 (W.D. Mich. 1993).  Once triggered, the duty to defend continues until there is no longer any uncertainty as to the possibility of coverage.  *Aetna Cas. & Sur. Co.,* at 853 citing *American Bumper and Mfg. Co.* at 455.

If, however, the potential for indemnification does not exist at the outset of the litigation, the duty to defend never arises.  *Id.; City of Woodhaven,* at 160 (where it was clear from the outset of the litigation that a pollution exclusion applied and there was no possibility for indemnification under the policy, there was no duty to defend).  Further, because the duty to defend is broader than the duty to indemnify, an insurer responsible for payment of defense costs may not necessarily also be responsible for payment of indemnification costs.  *South Macomb Disposal Authority v. Am. Ins. Co.,* 225 Mich. App. 635, 692; 572 N.W.2d 686 (1997).

Decker's argument that Travelers breached its duty to defend Decker for the Underlying Claim is curious, because it is blatantly contradicted by indisputable facts.

When Decker initially requested a defense for the US EPA Claim in 1995, Travelers did not have a duty to defend.  At the time Travelers denied coverage for the US EPA Claim, Michigan courts applied the manifestation theory of coverage to determine whether coverage under a particular insurance policy was triggered.  The manifestation theory places the "occurrence" at the latest possible time, *i.e*., when the property damage is discovered.  *Gelman Sciences, Inc. v. Fidelity and Cas. Co. of New York,* 456 Mich. 305, 313, 572 N.W.2d 617 (1998).  *See also e.g. Transamerica Ins. Co., v. Safeco Ins. Co.,*  189 Mich. App. 55, 472 N.W.2d 5 (1991) (coverage was triggered when symptoms resulting from exposure to harmful gas

manifested themselves).   The contamination at the ASTL (*i.e.* the "property damage") was not discovered until well after the Travelers Policies were in effect and hence under a manifestation theory they were not triggered.  Thus, when Decker requested coverage for the US EPA Claim in 1995, there was no potential for indemnification, and therefore, no duty to defend. *City of Woodhaven,* at 154.  As such, Travelers neither owed nor breached a duty to defend at that time.

By 1998, Michigan trigger law had changed to injury-in-fact, so when Decker later requested a defense for the EPA Lawsuit in 1998 and renewed its request for a defense for the US EPA Claim, Travelers ***agreed*** at that point to participate in Decker's defense of the EPA Lawsuit and US EPA Claim pursuant to a reservation of rights.  (Exs. R, S).   Further, when Decker requested a defense for the MDEQ Claim in 1999, Travelers again ***agreed*** to participate in Decker's defense of the MDEQ Claim pursuant to a reservation of rights.  (Ex. U).

Decker complains that Travelers did not actually defend it but merely reimbursed Decker for its defense costs but it fails to explain why this makes any difference.  As noted above, the fact is, Travelers, along with Decker's other carriers, paid all of the reasonable and necessary costs submitted by Decker that it incurred in its defense of the Underlying Claim while allowing Decker free reign to conduct its defense in any manner Decker deemed appropriate to protect its interests.   Given these undisputed facts, Decker can hardly now seek compensation from Travelers on the basis that it is unhappy with how it conducted its own defense.

Furthermore, Travelers has, to date, already paid Decker more than three times the amount of defense costs it actually owes.   In 2001, Travelers paid Decker $98,069.07 for defenses costs incurred with respect to the Underlying Claim.[10]   This payment represents 34% of the  $287,046.44  in  defense  costs  submitted  by  Decker  to  Travelers  although  as  stated  in

---

[10] Although the Underlying Claim had been pending for some time, Decker did not submit any defense invoices to Travelers until 2001.  (Exs. W, X).

Travelers brief in support of its motion for partial summary judgment on trigger and allocation [Doc # 62], application of a *pro rata*, time-on-the-risk allocation mandates that Travelers is only responsible for a 10% share (*i.e.* 4/40) of any defense costs.[11]  Accordingly, Travelers payment of $98,069.07 out of the $287,046.44 in defense costs submitted by Decker in 2001 or the $298,684.77 in total defense costs incurred to date as alleged in Exhibit S [Doc # 65-5, Page ID # 1995] to Decker's motions, exceeds the actual defense costs owed by Travelers to Decker by more than three times.  At most, Travelers was obligated to pay Decker defense costs in the amount of $28,704.64 (as of December 14, 2000) or $29,868.48 (to date).[12]

### B. Travelers did not breach the Travelers Policies and has not waived any rights or defenses to coverage.

Decker's final argument is an attempt to avoid the insurance contract language—to which it agreed—by claiming Travelers "waived" its right to enforce that language by breaching the contract.  Decker's argument is blatantly contradicted by undisputed facts, and is contrary to Michigan law.  Decker's reliance on *Giffels v. Home Ins. Co.,* 19 Mich. App. 146, 153, 172 N.W.2d 540 (1969), *Detroit Edison Co. v. Michigan Mut. Ins. Co.,* 102 Mich. App. 136, 301 N.W.2d 832 (1980) and *Elliot v. Cas. Ass'n of Am.,* 254 Mich. 282, 287, 236 N.W. 782, 783 (1931) is misplaced.  Those cases are inapposite as they all involve the situation, not present here, where an insurer wrongfully refuses to defend its insured.

---

[11] Travelers paid more than its 10% share because it had entered into a negotiated cost share arrangement with Decker's other carriers.  The total amount (defense and/or indemnity) paid by Decker's other carriers is not known by Travelers.  But, as discussed in Section IV, Decker is not entitled to recover more than its actual costs.

[12] According to Decker's Exhibit S, Decker has not incurred any defense costs since 2008 and has incurred only $11,838.33 in defense costs since Decker first requested reimbursement of its defense costs from Travelers on December 14, 2000.  Further, the "Total Costs Paid to Date" as of December 14, 2000 was $466,670.43.  (Ex. V).  Thus, even assuming all the costs included were defense costs (which they are not) at most, given Travelers *pro rata*, time-on-the-risk share, Travelers was responsible for $46,667.04.

The *Giffels* court held that an insured is released from compliance with the terms and conditions of its insurance policy where the insurer denies liability <u>and</u> refuses to defend the action. *Giffels* at 153-154 (emphasis added). Similarly, *Detroit Edison Co.,* and *Elliot* discussed the general rule that "the insurer's <u>unjustified refusal to defend</u> makes it bound to pay the amount of any reasonable, good faith settlement made by the insured…." *Detroit Edison Co.,* at 144 (emphasis added); *Elliot* at 287. In this case, as discussed above, Travelers fully complied with any obligation it had to provide Decker with a defense for the Underlying Claim. Travelers participated in Decker's defense of the Underlying Claim pursuant to a full reservation of Travelers rights and defenses under the Travelers Policies along with Decker's other carriers. (Exs. R, S, U and X). As such, there was no refusal to defend (unjustified or otherwise) by Travelers that requires Travelers to indemnify Decker regardless of whether coverage is available to Decker under the Travelers Policies for the Underlying Claim.

Furthermore, Travelers defense of Decker under a reservation of rights was in compliance with well-established Michigan law that "an insurance company that undertakes a defense of its insured with a general reservation of rights does not waive any potential defense to coverage, if the insured was not prejudiced in asserting its position of coverage." *Lansing Bd. of Water and Light v. Deerfield Ins. Co.,* 183 F. Supp. 2d 979, 984 (W.D. Mich. 2002); *Kirschner v. Process Design Assoc., Inc.,* 459 Mich. 587, 592 N.W. 2d 707 (1999). The *Kirchner* court explained:

> ... when an insurance company undertakes the defense of its insured, it has a duty to give reasonable notice to the *insured* that it is proceeding under a reservation of rights, or the insurance company will be estopped from denying its liability. The application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy. *Id.* at 710–11 (emphasis in original) (citations omitted).

15

Judges in this Court have reached this same conclusion when applying Michigan law. *See First Mercury Syndicate, Inc. v. Telephone Alarm Sys., Inc.,* 849 F. Supp. 599 (W.D. Mich. 1994) (McKeague, J.)(insurer's defense was not waived where insurer defended the insured, while expressly reserving "all rights and defenses" available under the terms of the policy); *Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F. Supp. 417 (W.D. Mich. 1993) (Gibson, C.J.) (defense was held not waived where insurer raised specific defense in second reservation or rights letter two months prior to trial, where first reservation of rights letter contained a general reservation of rights); *Lansing Bd. of Water and Light,* at 985 (insurer did not waive its defense that pollution exclusion precluded coverage where insurer defended its insured and provided notice of a general reservation of rights under its policy).

Travelers fully satisfied any obligation it had to defend Decker for the Underlying Claim, even setting aside the complete absence of potential coverage because of the pollution exclusion in the Travelers Policies. Travelers has not breached the Travelers Policies and is not liable for the costs incurred by Decker to settle the Underlying Claim. Consequently, and even setting aside the applicability of the pollution exclusion, Decker is not entitled to summary judgment regarding Travelers alleged duty to defend, and its motions should be denied.

Further, as alleged in Count II of Travelers Counterclaim [Doc # 8], Travelers is entitled to reimbursement from Decker of at least the approximately $70,000 Travelers over paid Decker for defense costs relating to the Underlying Claim. *See e.g. United National Insurance Company v. SST Fitness Corp.,* 309 F.3d 914 (6th Cir. 2002).

## III. Decker Has Not Met Its Burden of Showing it has Satisfied all Conditions Under the Travelers Policies.

It is Decker's burden to show actual compliance with all of the conditions precedent under the Travelers Policies. *Bruinsma v. State Farm Fire and Cas. Co.,* 410 F. Supp. 2d 628,

633 (W.D. Mich. 2006).   Decker has failed to meet its burden.   Decker's  argument that Travelers is deemed to have admitted that all conditions precedent to Travelers insuring Decker have been performed or occurred is not supported by case law and is contrary to the facts in this case.  Travelers raised several affirmative and avoidance defenses that comply with Fed. R. Civ. P. 9(c).  [Doc. # 8].  Specifically, Travelers affirmative and avoidance defense numbers 19-26 address conditions precedent.  [Doc. # 8].

Further, Rule 9(c) does not require that a denial of the performance of a condition precedent be made in an answer.  *Heights Driving School, Inc. v. Top Driver, Inc.,* 51 Fed. App. 932 (2002) (sufficient to raise specific denials in summary judgment motion).   As Travelers has noted in footnote 3 in this brief, Decker failed to provide timely notice of the US EPA's requests for information and Travelers reserves the right to argue to that such late notice prejudiced Travelers and precludes coverage.

## IV.     Decker Has Failed to Demonstrate Entitlement to Damages.

### A.        Breach of Contract Damages.

The remedy for breach of contract is to place the non-breaching party in as good a position as if the contract had been fully performed.  *Corl v. Huron Castings, Inc.,* 450 Mich. 620, 625, 544 N.W.2d 278 (1996).  The "goal in contract law is not to punish the breaching party, but to make the non-breaching party whole."  *Id.* at 625-626.  Under Michigan law, "[t]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made." *Lawrence v. Will Darrah & Assocs., In*c., 445 Mich. 1, 6; 516 N.W.2d 43 (1994) (quoting *Kewin v. Massachusetts Mut. Life Ins. Co*., 409 Mich. 401; 295 N.W.2d 50 (1980)).  Application of this principle usually results in the plaintiff's recovery being limited to "the monetary value of the contract had the breaching party fully performed under it," or in other words, the claimant's expectation interest.

*Lawrence*, at 6.

Breach of contract damages, including damages for "expectation interest," are not appropriate in this case. Such damages and interest are only available when an insurer breaches a duty to defend or indemnify under the insurance policy. That is not the case here. Travelers defended Decker for the Underlying Claim and paid Decker for more than Travelers *pro rata* share of Decker's defense costs.

Further, as discussed in Section I and in Travelers brief in support of its motion for summary judgment based on the pollution exclusion [Doc. # 59], the pollution exclusion contained in the Travelers Policies applies and precludes coverage (defense and indemnity) for the Underlying Claim. As a result, Travelers does not owe any additional sums to Decker for the Underlying Claim. In fact, Decker must reimburse Travelers for the approximately $70,000 Travelers over-paid Decker in defense costs.

Additionally, Decker's allegation that **all** of the costs it incurred related to the Underlying Claim are "defense" costs is incorrect. "Defense costs are those expenses related to developing and setting forth a theory establishing that the defendant is not liable or otherwise challenging liability." *South Macomb Disposal Authority* at 692. *See also Fireman's Fund Ins. Co. v. Ex-Cell-O-Corp,* 790 F. Supp. 1318, 1321 (E.D. Mich. 1992) (defense costs include those "that are reasonable and necessary to limiting the scope and/or costs of remediation").

The costs incurred by Decker in limiting its liability and/or the scope of the remediation have been included by Travelers in the amounts paid to Decker as defense costs. (Ex. X). Travelers March 12, 2001 letter details the costs paid to various environmental consultants as investigation related defense costs. *Id.*

"[C]osts expended for remediation or making a potentially injured party whole are

18

indemnification costs." *South Macomb Disposal Authority* at 692. The costs incurred by Decker in connection with its obligations under the Consent Decree are indemnification costs. A consent decree is "a settlement agreement subject to continued judicial policing." *Kelly v. Thomas Solvent Co.,* 717 F. Supp. 507, 514 (W.D. Mich. 1989). Decker even categorizes such costs as "settlement costs" and not "defense costs" on its own Exhibit S.

Travelers March 12, 2001 letter describes Travelers and Decker's agreement that certain charges that were related to implementation of Decker's obligations under the Consent Decree "were more in the nature of indemnity, not defense." *Id.* at page 7. Decker's continued Operation & Maintenance ("O&M") responsibilities under the Consent Decree also are indemnity, not defense costs as they are remediation expenses. Finally, Decker's $350,000 payment to the US EPA for past and future response costs, pursuant to the terms of the Consent Decree, was an indemnity cost.

**B.      Interest.**

While Michigan law recognizes the award of common law interest as an element of damages in a contract to action to compensate for the lost use of funds, *Gordon Sel-Way, Inc. v. Spence Bros., Inc.,* 438 Mich. 488, 499, 475 N.W.2d 704 (1991), Travelers has not breached the Travelers Policies. Accordingly, Decker is not entitled to interest for the lost use of its funds.

Decker also is not entitled to statutory penalty interest under M.C.L. § 500.2006. Travelers paid Decker's defense costs within 60 days of the date the invoices necessary to substantiate and pay the claim were submitted to Travelers and no additional amounts are owed to Decker for the Underlying Claim. On or about January 18, 2001, Decker provided Travelers with the invoices and billings for which Decker had first requested reimbursement for on December 14, 2000. Checks dated March 14, 2001 were issued to Decker for its defenses costs.

(Ex. Y).[13]

### C.    The Collateral Source Rule Does Not Apply.

The Michigan Supreme Court has made it clear that the collateral source rule does not

apply to damages in contract cases.    *Corl* at 286.  In *Corl v. Huron Casting, Inc, supra,* the

Michigan Supreme Court held that "[t]he collateral source rule is a concept of tort law which

provides 'that the recovery of damages from a *tortfeasor* is not reduced by the plaintiff's receipt

of money in compensation for his injuries from other sources.'" *Id.*  at 280 citing *Tebo v. Havlik,*

418 Mich. 350, 366, 343 N.W.2d 1981 (1984).    The Michigan Supreme Court distinguished

between tort and contract remedies, noting that to extend the collateral source rule to contract

actions "is in direct conflict with the fundamental precept that the remedy for breach of contract

focuses on making the nonbreaching party whole." *Id.*  at 281-282.

The inapplicability of the collateral source rule to breach of contract actions is well

established under Michigan law.  *See e.g. RCO Engineering, Inc. v. ACR Industries, Inc.,* 235

Mich. App. 48, 61-62, 597 N.W.2d 534 (1999) vacated in part on other grounds 463 Mich. 979

(2001) (collateral source rule does not apply to action under Michigan Environmental Response

Act seeking recovery of response costs); *In re Dow Corning Corp.,* 2010 WL 3927738 *9-*10

(Docket No. 95-20512, E.D. Mich. June 9, 2010) (amounts paid by reinsurer must be taken into

consideration in determining what amount will make the insurers whole).  The holding in *Corl* is

not limited to breach of employment contracts as Decker asserts and must be followed by this

Court.

Thus, to the extent that this Court determines that Travelers owes coverage to Decker for

the Underlying Claim, Travelers is only responsible for its *pro rata,* time-on-the-risk share

---

[13] Three separate checks were issued:  $48,466.30 for the US EPA Claim; $49,415.99 for the
EPA Lawsuit [Cooper Claim]; and $189.69 for the MDEQ Claim.

(10%) and Travelers must be given credit for all payments by any other insurance carriers or collateral sources of the amounts claimed by Decker in this action.[14]

## **CONCLUSION**

For all of the reasons set forth above, Plaintiff's motions for summary judgment, on its Complaint [Doc. ## 58, 65] and on Travelers Counterclaim [Doc. ## 57, 61], should be denied.[15]

Respectfully submitted,

PLUNKETT COONEY, P.C.

By:     *s/Nicole E. Wilinski*
   Charles W. Browning (P32978)
   Jeffrey C. Gerish (P51338)
   Nicole E. Wilinski  (P61904)
   38505 Woodward Avenue, Suite 2000
   Bloomfield Hills, MI  48304
   (248) 901-4000
   cbrowning@plunkettcooney.com
   jgerish@plunkettcooney.com
   nwilinski@plunkettcooney.com

   *Attorneys for Travelers*

Dated:  December 12, 2014

---

[14] In this regard, Travelers notes the total amount of "Invoiced Claims" is $1,019,675.19 and the total amount of "Payments" is $878,762.78 as set forth in Decker's Exhibit S. [Doc. # 65-5, Page ID # 2002]. Thus, according to Decker's own Exhibit S, Decker has been reimbursed for all but $140, 912.41 of its costs related to the Underlying Claim.  Travelers further notes, that at most, assuming Decker is entitled to coverage (defense and indemnity) for the Underlying Claim, Travelers allocated amount of damages is 10% or $101,967.52 (and Travelers has already paid Decker $98,069.07).

[15] Travelers also objects to Decker's attachment of confidential settlement communications to its motions as Exhibit N [Doc # 64, Page ID ## 942-1943] and Exhibit O [Doc # 63, Page ID ## 1936-1938] and requests that the Court strike these exhibits.  Theses exhibits are privileged settlement communications and are inadmissible pursuant to F.R.E. 408.  *Goodyear Tire & Rubber Co. v Chiles Power Supply, Inc.,* 332 F.3d 976 (6th Cir. 2003); *Stryker Corp. v. XL Ins. Am., Inc.,* 2013 WL 326408 (W.D. Mich. June 27, 2013).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2014, I electronically filed a copy of the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Phillip M. Moilanen at <u>moilanen@dmci.net</u>

*s/Nicole E. Wilinski*
Nicole E. Wilinski  (P61904)

Open.06900.31965.14876687-1