UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DECKER MANUFACTURING
CORPORATION,

    Plaintiff,

v.

THE TRAVELERS INDEMNITY
COMPANY,

    Defendant.
_____/

Case No. 1:13-CV-820

HON. ROBERT HOLMES BELL

**O P I N I O N**

At the final pretrial conference on June 9, 2015, Plaintiff Decker Manufacturing Corporation identified four outstanding legal issues that were preventing Plaintiff and Defendant Travelers Indemnity Company from reaching an agreement on the amount owed by Defendant to Plaintiff. In light of the parties' representation that resolution of these issues will preclude the need for a trial, the Court adjourned the scheduled trial date and agreed to address the remaining legal issues in a written opinion.

**I.**

In previous opinions, this Court declared that Travelers' liability for any defense or indemnity costs incurred or to be incurred by Decker with respect to the Albion Sheridan Township Landfill will be measured by the pro rata time-on-the-risk formula (Feb. 3, 2015, Order, ECF No. 80), and that Travelers' obligation is limited to 12.40% of Decker's defense

and indemnity costs (May 5, 2015, Order, ECF No. 97). Decker contends that the Court failed to expressly address three allocation issues that it raised in its prior motions and briefs. The Court is not required to expressly address every argument raised by a party. By choosing the pro rata time-on-the-risk formula and limiting Travelers' obligation to 12.40% of Decker's costs, the Court has explicitly or by reasonable implication, rejected Plaintiff's alternative allocation theories. Nevertheless, in the interest of encouraging resolution of this action, the Court will explain its reasons for rejecting Plaintiff's alternative allocation theories.

**A. Allocation Based on Agreement Among Insurers**

In response to the claim brought by the United States Environmental Protection Agency (US EPA), the federal environmental action filed by the United States, *United States v. City of Albion*, Case No. 1;97-CV-1037 (W.D. Mich.), and the State of Michigan's demand for payment of response costs incurred by the Michigan Department of Environmental Quality (MDEQ) at the Albion-Sheridan Township Landfill, Travelers, together with Decker's other insurers, entered into an agreement to pay Decker's defense costs under a reservation of rights. (Def.'s Exs. R, S, ECF No. 71.) Travelers advised Decker that it was negotiating a cost sharing agreement with Decker's other insurance carriers. (Def.'s Jan. 12, 2001, letter, ECF No. 71-25.) Travelers agreed to pay 40% of the defense costs until March 25, 1998, and 29% for defense costs from thereafter. (Def.'s Mar. 12, 2001, letter, ECF No. 65-6.) Travelers ultimately paid $98,067.00 toward Decker's defense costs. (Checks, ECF

No. 71-27.)

Although Decker acknowledges that it was not a party to the insurers' agreement (Pl.'s Opp. Br. 20, ECF No. 92), Decker contends that Travelers should be estopped or otherwise precluded from retroactively having its allocation reduced to 12.4% of Decker's defense costs. Decker contends that it would not be fair to limit Travelers' liability at this time because Decker has already settled with the other insurers and is no longer able to collect additional defense costs from them.

The Court is not persuaded by Decker's argument. When Travelers first agreed to pay defense costs, Travelers explained in a letter to Decker that it was doing so under a specific reservation that Travelers was not liable for any defense costs associated with property damage which takes place outside of the policy period or that was not caused by an occurrence as defined by the policies. (Def.'s Feb. 17, 1999, letter, ECF No. 71-20, Page ID#2246.) Travelers further reserved its right to seek reimbursement for any defense payments made on Decker's behalf. (*Id.*) In a subsequent letter, Travelers reserved its right to contest any allocation of years of insurance coverage that Decker might claim to be appropriate. (Def.'s Feb. 23, 1999, letter, ECF No. 71-21, Page ID#2250.) Travelers subsequently reiterated that it was participating in Decker's defense pursuant to a complete reservation of Travelers' rights. (Def.'s Sept. 20, 1999, letter, ECF No. 71-23.)

Because Decker was not a party to the insurers' allocation agreement, because Decker has not shown that it was an intended third party beneficiary of the insurers' allocation

agreement, and because Decker has not shown that its alleged reliance on the insurers' allocation agreement was reasonable, Decker's contention that Travelers' liability to Decker is controlled by Travelers' agreement with the other insurers lacks merit.

## B.  Allocation Based on All Sums Language

Plaintiff asserts that insurance contracts should be read "as a whole, giving harmonious effect, if possible, to each word and phrase," *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003), and that, in violation of this principle, the Court has not ruled on the meaning of the Policies' "all sums" language.

Contrary to Plaintiff's assertions, this Court expressly addressed the Policies' "all sums" language in its February 3, 2015, opinion. (Feb. 3, 2015, Op. 27-29, ECF No. 79). As noted in that opinion, the Travelers Policies all provide that Travelers will pay "all sums which the Insured shall become legally obligated to pay as damages" because of "property damage" caused by "an occurrence." The Court rejected Plaintiff's argument that there was nothing in the policy language which mentions a time period. As the Court noted, the Policies' definitions of the terms "property damage" and "occurrence" clearly limit coverage to property damage or occurrences "during the policy period." (*Id.* at 28.) The Court also rejected Plaintiff's reliance on *Dow Corning Corp. v. Continental Casualty Co.*, No. 200143, 1999 WL 33435067 (Mich. Ct. App. Oct. 12, 1999), because, unlike the Continental Policy at issue in *Dow Corning*, the Travelers Policies did not provide that the insurer would continue to provide coverage if an injury continued beyond the termination of the policy.

(Feb. 3, 2015, Op. 28.)  Plaintiff's argument that Defendant agreed under the Policies to pay "all sums" to which Plaintiff became legally obligated to pay as damages without regard to when the property damage occurred lacks merit.

## C.  Allocation Based on Limits of Liability Language

Plaintiff argued in the final pretrial order that the Court has not ruled on the Policies' "limits of liability" clause.  (Final Pretrial Order 2, ECF No. 101.)  According to Plaintiff, the Policies include a method of allocation when several policies share liability for damage occurring over several policies.  (*Id.*)

The language Plaintiff relies on is found in the 1973-74 policy: "[P]roperty damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered one occurrence."  (ECF No. 9-1, Page ID#166.)  Similar language appears in the 1975 and 1976 policies. (ECF No. 12-1, Page ID#237; ECF No. 14-1, Page ID#319.) According to Plaintiff, this language suggests that: (1) regardless of how long the damage continues, it is considered one occurrence; (2) coverage continues until the exposure has stopped or the policy limits have been reached; and (3) the "pro rata time-on-the-risk" should not apply. (Pl. Resp. re Trigger & Allocation 14, ECF No. 73; Pl. Br. in Opp. 22-23, ECF 92.)

The limits of liability language cited by Decker does not suggest that coverage continues until the exposure has stopped, nor does it suggest that the pro rata time-on-the-risk method does not apply.  As this Court stated in its prior opinion, the plain language of the

5

Travelers Policies provides coverage only for property damage that actually occurs during the policy period. The limits of liability provision simply provides that continuous or repeated exposure shall be one occurrence. The purpose of this provision is to provide per occurrence and aggregate limits of liability. Nothing in this provisions alters the requirement in the Travelers' Policies that "property damage" caused by an "occurrence" must take place during the policy period in order to be covered.

## II.

The final issue Decker has requested a ruling on concerns application of the Michigan Penalty Interest Statute.

Michigan's Uniform Unfair Trade Practices Act, Mich. Comp. Laws § 500.2006(4), allows a claimant under an insurance policy to recover twelve percent interest for the delay in payment of an insurance claim.[1] "'[T]he purpose of the penalty interest statute is to penalize insurers for dilatory practices in settling meritorious claims, not to compensate a plaintiff for delay.'" *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, II, 681

---

[1]The Act provides in pertinent part:

> (4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. . . . Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

Mich. Comp. Laws § 500.2006(4).

F.3d 819, 826 (6th Cir. 2012) (quoting *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 74, 76 (Mich. Ct. App. 1998), *rev'd on other grounds by Griswold Props., LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 555 (Mich. Ct. App. 2007)).  Penalty interest attaches to claims by first party insurance claimants even if the claim was reasonably in dispute. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012).  Penalty interest commences 60 days after the insured provides "satisfactory proof of loss" to the insurer.  Mich. Comp. Laws § 500.2006(4).

Decker contends that penalty interest should begin to run 60 days after December 6, 1995, or the date the expense was incurred, which ever was later.  Decker does not contend that it submitted a claim or satisfactory proof of loss to Travelers by that December 1995.  In fact, Decker acknowledges that it did not provide any proof of loss prior to 2000.  However, Decker asserts that because Travelers denied coverage, Travelers waived the requirement that claims be submitted before penalty interest began to accrue during the period between December 6, 1995, and December 14, 2000.  (Jt. Final Pretrial Order 2-3, ECF No. 99.)  Decker contends, in the alternative, that if penalty interest does not begin to run on December 6, 1995, then it should begin to run on December 14, 2000, when Decker sent Travelers a claim for reimbursement with attached spreadsheets outlining defense costs and costs incurred in performing obligations under the settlement agreement.  (Pl.'s Dec. 14, 2000, letter, ECF No. 71-24.)

Travelers contends that the penalty interest statute was not triggered until January 18,

7

2001, when Decker first provided Travelers with invoices and billings relative to the Landfill. (Proposed Final Jt. Pretrial Order 9, Uncontroverted Facts ¶ 21, ECF No. 99.)

The parties have essentially requested the Court to make a legal determination as to whether penalty interest should start running on December 6, 1995, December 14, 2000, or January 1, 2001.

Decker has provided no case law in support of its contention that, for purposes of the Michigan penalty interest statute, an insurer waives the right to presentment of a claim when it denies coverage. The only case Decker has cited is a case discussing compensatory rather than penalty interest under an Ohio statute. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 692 (6th Cir. 2000) (holding that compensatory prejudgment interest should be measured from the date the insured was incorrectly forced to expend or absorb defense costs). *Lincoln Electric* does not assist this Court in its analysis because the Ohio statute involved in *Lincoln Electric* did not involve penalty interest, and did not involve the same statutory preconditions that are found in the Michigan penalty interest statute.

As a precondition to the award of penalty interest, the Michigan statute requires the claimant to provide "satisfactory proof of loss." Mich. Comp. Laws § 500.2006(4). "'As a penalty, the statute is to be strictly construed.'" *McCahill v. Comm. Union Ins. Co.*, 446 N.W.2d 579, 587 (Mich. Ct. App. 1989) (quoting *Medley v. Canady*, 337 N.W.2d 909, 911 (Mich. Ct. App. 1983)). The statute contains no exception for the satisfactory proof of loss based on an insurer's breach of contract. Accordingly, the Court is not persuaded that

8

Michigan courts would begin assessing penalty interest prior to the insurer's receipt of satisfactory proof of loss, even when the insurer has breached the insurance contract by declining to defend and indemnify.

The next issue, then, is when Decker supplied a satisfactory proof of loss. Decker contends that it provided satisfactory proof of loss on December 14, 2000, when Decker sent Travelers a spreadsheet summary of expenses related to the Landfill. Travelers contends that Decker did not provide satisfactory proof of loss until January 18, 2001, when Decker first sent Travelers invoices and billings relative to the Landfill.

The penalty interest statute does not define what constitutes "satisfactory proof of loss." However, the obligation to supply a satisfactory proof of loss must be read in light of Mich. Comp. Laws § 500.2006(3) which provides in relevant part that "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." If the insurer fails to specify in writing the materials that constitute satisfactory proof of loss, the insured is excused from providing further proof of loss. *Angott v. Chubb Grp. Ins.*, 717 N.W.2d 341, 354 (Mich. Ct. App. 2006). "[S]atisfactory proof of loss does not equate to agreement as to the amount of damages." *Griswold Properties, LLC v. Lexington Ins. Co.*, 740 N.W.2d 659, 673, *opinion reinstated in part, superseded in part,* 741 N.W.2d 549 (Mich. Ct. App. 2007). If an insured provides the materials specified by the insurer, the proof of loss is satisfactory. *Id.* "The insurer may disagree with the amount of loss claimed, at which point the damages

9

are in dispute, but the insurer may not argue that the insured has failed to supply satisfactory proof of loss." *Id.*

On January 12, 2001, Travelers responded to Decker's December 14, 2000, spreadsheet summary of payments. Travelers advised:

> [W]hile Travelers appreciates the expense summary you provided with your letters, we require that you submit all of your itemized legal invoices to Mr. DacQuisto in Travelers SLG for review and consideration. It is my understanding that you have spoken with Mr. DacQuisto, and that he is aware that you will be sending itemized legal invoices to his attention

(Def.'s Jan. 12, 2001, letter, ECF No. 71-25.)

Travelers' January 12, 2001, letter was sent within 30 days of Decker's December 14, 2000, claim. The Court is satisfied that Travelers' January 12, 2001, letter constitutes a specification in writing of the materials required for a satisfactory proof of loss. The parties agree that Decker responded with the itemized invoices and billings on January 18, 2001. Accordingly, the Court finds that Decker submitted a satisfactory proof of loss on January 18, 2001, and that the penalty interest statute would accordingly begin to run 60 days after January 18, 2001.

## III.

In light of the rulings in this opinion, and pursuant to the parties' representations at the final pretrial conference, it appears that the parties should now be in a position to reach an agreement on a judgment conforming to the Court's various rulings. The Court will accordingly direct the parties to submit a stipulated proposed judgment within fourteen days

of this opinion, or, if agreement cannot be reached, then Plaintiff shall submit its proposed judgment within fourteen days of this opinion, and Defendant will have seven days to respond.

An order consistent with this opinion will be entered.


Dated:  June 25, 2015                                             /s/ Robert Holmes Bell
                                                                            ROBERT HOLMES BELL
                                                                            UNITED STATES DISTRICT JUDGE